UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:07-CV-156-KSF

INTERNATIONAL COAL GROUP, INC.                                    PLAINTIFF

vs.                              **OPINION AND ORDER**

DOROTHY PENNINGTON                                                DEFENDANT

This matter is before the Court on the parties' cross motions for summary judgment. The issue is whether the remedy of an equitable lien or constructive trust is available to Plaintiff pursuant to 29 U.S.C. § 1132(a)(3). The relevant facts are not disputed.

I.   BACKGROUND

Defendant Dorothy Pennington ("Pennington") was injured in an automobile accident on July 16, 2005. Through her spouse's employment with International Coal Group, Inc. ("ICG"), she was a beneficiary of ICG's self-funded, group health, employee benefit plan ("Plan"). She received $41,836.79 in medical benefits from the Plan as a result of her claims. On July 14, 2006, Pennington brought a negligence action against the third party involved in the accident, and settled that action for $200,000 in March 2007. In May 2007, she recovered settlement proceeds of $25,000 from her underinsured motorists' carrier. ICG requested reimbursement for the medical benefits paid, but Pennington refused to turn over any of the settlement proceeds to ICG.

ICG brings this action for an equitable lien or constructive trust over a portion of the settlement proceeds so it may be repaid. The Plan documents provide in part:

> **Right to Recovery/Subrogation**
> If you or a family member receive any payment relating to an injury or illness caused by a third party, the Medical Plan is entitled to repayment of the amount of Medical, Dental or Vision Benefits received.

> In addition, the Medical Plan is not obligated to pay Medical, Dental or Vision Benefits for any medical expenses for which a third party may be liable unless you or someone legally authorized to act for you promises in writing to
>
> * * *
>
> - Reimburse the Plan for any benefit payment that you or your dependents receive from a settlement with a third party. You must make the reimbursement within 30 days of receiving the settlement.
>
> - The Medical Plan's right to subrogation and repayment is regardless of whether you have been made whole or fully reimbursed for your damages and regardless of any classification of such recovered proceeds as medical, dental or vision expenses.

ICG claims that this Plan language and 29 U.S.C. § 1132(a)(3) entitle it to a constructive trust or equitable lien over the settlement proceeds received by Pennington.

Pennington opposes ICG's summary judgment and cross moves for summary judgment claiming that the Plan language and ERISA's equitable remedy statute are not applicable here. Pennington first argues that the present action is not one for equitable relief, but instead is an action "to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation," which would be a legal action [DE 19-2, p. 4]. Pennington contends that the two requirements for an equitable lien have not been met by the Plan language in that it fails to specify the particular fund from which reimbursement is due and the particular portion of any such fund due to the Plan.

Alternatively, she claims that, even if the Plan language is sufficient, ICG has not identified a specific fund in her possession to which an equitable lien or constructive trust might attach. She argues that the funds must be traceable and readily identifiable and must be distinct from her general assets. Pennington notes that the settlement funds were paid jointly to her and her husband, who had a loss of consortium claim. She states in an affidavit that the funds were commingled with their personal funds and were spent. [DE 19-3].

Alternatively, Pennington claims that the Sixth Circuit default "make whole" doctrine bars ICG's claim because she had a loss of earnings claim in the amount of $349,033 in addition to her claims for pain and suffering. She argues that the Plan language is not sufficient to disavow the make whole doctrine in that the Plan fails to specify who has priority to any recovered amounts or whether the Plan has a right to full or partial recovery. Additionally, Pennington claims she had no knowledge of these Plan provisions prior to receipt of the medical benefits, and that no agreement to these terms was ever presented to or signed by her. Accordingly, she claims ICG has waived reliance on this Plan language by failing to obtain a written agreement.

Finally, Pennington claims that the Plan created only a right of subrogation, not a right of reimbursement, and that the doctrines of waiver, estoppel and laches bar the claim. She notes that ICG was advised of the personal injury action, but chose not to intervene.

In their remaining briefs, the parties argue conflicting interpretations of the statute and case law . These arguments and other relevant facts are considered in the analysis below.

## II.   ANALYSIS

### A.   Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

3

475 U.S. 574, 587 (1986). In this case, both parties are moving for summary judgment based upon their interpretations of the statute and the Plan language.

### B. ERISA and Equitable Relief

Under § 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), a fiduciary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The first question in this case is whether the relief sought by ICG is equitable in nature so as to be available under § 1132(a)(3).

Pennington relies on *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), to argue that ICG is seeking to compel payment of money past due on a contract, which is a legal remedy, not an equitable one. She relies on the unpublished opinion in *Fleetwood Enterprises, Inc. v. Taylor*, 2007 WL 2826180 (W. D. Ky. 2007), to claim that the Plan language is not sufficient to create a constructive trust or equitable lien. She relies on various cases, including *Knudson*, to argue that there are no specifically identifiable and traceable funds in her exclusive possession that are distinct from her general assets. Particularly because the settlement funds she received have been dissipated, she argues there are no funds to which an equitable lien could attach. [DE 19-2, pp. 4-9].

In *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006), the Supreme Court revisited the scope of relief available under § 1132(a)(3) and clarified its decision in *Knudson*. *Sereboff*, like the present case, involved an employee health insurance plan, the beneficiaries of which were involved in an automobile accident. After the plan paid nearly $75,000 in medical benefits, the Sereboffs settled their tort suit against the third parties for $750,000. The plan contained an "Acts of Third Parties" provision that applied "when [a beneficiary is] sick or injured as a result of the act or omission of another person or party." A beneficiary who "receives benefits"

4

under the plan for such injuries is required to "reimburse [Mid Atlantic]" for those benefits from "[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)." *Id.* at 359. The plan administrator successfully brought an action under § 1132(a)(3) to collect the medical expenses it had paid. The Supreme Court granted certiorari to resolve a conflict among the circuits and affirmed Mid Atlantic's equitable relief against the settlement funds.

The Court said that " the 'Acts of Third parties' provision in the Sereboffs' plan specifically identified a particular fund, distinct from the Sereboff's general assets – '[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)' and a particular share of that fund to which Mid Atlantic was entitled – 'that portion of the total recovery which is due [Mid Atlantic] for benefits paid.'" *Id.* at 364. Thus, Mid Atlantic could rely on "the familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing" and, as soon as the settlement fund was identified, Mid Atlantic could "impose on that portion a constructive trust or lien." *Id.*

The Court distinguished *Knudson* because the funds sought there were never in Knudson's possession. Instead, they were in a special trust under California law. *Id.* at 362-63. The *Sereboff* court also held that the "strict tracing rules" associated with equitable restitution did not apply to an equitable lien by agreement, such as the Sereboffs. *Id.* at 364-65. "*Barnes* confirms that no tracing requirement of the sort asserted by the Sereboffs applies to equitable liens by agreement or assignment." *Id.* at 365. Finally, the Court clarified that "the fund over which a lien is asserted need not be in existence when the contract containing the lien provision is executed." *Id.* at 366. To the contrary, an agreement to charge property not in existence "constitute[s] an equitable lien upon the property" when it later comes into existence. *Id.* at 366, quoting 4 S. Symons, Pomeroy's Equity Jurisprudence § 1236, pp. 699-700 (5th ed. 1941).

Prior to *Sereboff* , the Sixth Circuit held in *QualChoice, Inc. v. Rowland*, 367 F.3d 638, 648-49 (6th Cir. 2004), under strongly similar facts, that the relief sought by the plan administrator was

5

a claim at law involving a contract to pay money, for which no equitable lien could attach. *Sereboff* abrogated *QualChoice*. *Sereboff*, 547 U.S. at 356. *See also Bosin v. Liberty Life Assur. Co. of Boston*, 2007 WL 1101187 at *10 (W.D.Mich. 2007) ("QualChoice was rejected by the Sixth Circuit in *Primax Recoveries, Inc. v. Gunter,* 433 F.3d 515, 516 (6th Cir. 2006), and ultimately overruled and abrogated by the Supreme Court in *Sereboff v. Mid Atlantic Medical Servs. Inc.,*" 547 U.S. 356 (2006)).

Several of Pennington's arguments were rejected by *Sereboff*. Her argument based on *Knudson* and *QualChoice* that ICG should only be entitled to a legal remedy was refuted. Also rejected was the argument that ICG must trace specific funds to Pennington's possession before an equitable lien would attach. Instead, the entitlement to a lien arose before the funds come into existence. Pennington would be a trustee as soon as she had title to any of the funds, and ICG would be entitled to a constructive trust or lien when the funds were identified.

Pennington urges that no lien could be imposed unless she had "exclusive" possession of the funds. [DE 19-2, p. 7]. She does not cite any authority that supports this proposition. She attempts to distinguish her case from *Sereboff* by claiming the funds in *Sereboff* had been "specifically set aside and preserved in an investment account, and further within the *sole control* of the defendant." *Id.*, emphasis added. The facts of *Sereboff* were, however, that Mid Atlantic sought a restraining order and preliminary injunction to require the Sereboffs to set aside the funds. The court approved a stipulation that the funds would be preserved in an investment account "until the Court rules on the merits of this case and all appeals, if any, are exhausted." *Sereboff*, 547 U.S. at 360. Thus, the settlement funds were controlled by the court, not the Sereboffs, and were not in the Sereboffs' exclusive possession.

A related claim by Pennington was rejected by cases following *Sereboff*. She asserts that no lien can attach because the settlement funds in her case were commingled with other funds and were dissipated. [DE 19-2, p. 8; 19-3 Affidavit]. Essentially, she is arguing that anyone who

6

commingles or dissipates their settlement funds quickly enough can escape the obligations of an equitable lien. The case law is to the contrary.

In *Gilchrest v. Unum Life Ins. Co. of America*, 255 Fed. Appx. 38 (6th Cir. 2007), a plan administrator, pursuant to 29 U.S.C. § 1132(a)(3), sought to recover $3,564 in overpayments resulting from the beneficiary's receipt of Social Security disability benefits. Gilchrest responded that he did not have the money to refund the overpayments. *Id.* at *40. The Sixth Circuit considered *Sereboff* and said: "the court clarified that to establish an equitable lien by agreement, strict tracing of funds is not required and the fund need not have been in existence when the contract was executed. For this reason, Gilchrest's undisputed averment that the overpayments had been dissipated would seem to be of no avail." *Id.* at *44-45.

In *Popowski v. Parrott*, 461 F.3d 1367, 1374, n. 8 (11th Cir. 2006), the court also noted *Sereboff's* rejection of a tracing requirement for liens by agreement and said that commingling of funds does not disqualify an equitable lien. Similarly, in *Schultz v. Progressive Health, Life and Disability Benefits Plan*, 481 F. Supp. 2d 594 (S.D. Miss. 2007), the beneficiary claimed she spent all the overpaid funds and, therefore, they were no longer in her possession and control. The court said: "In *Sereboff*, the court rejected a similar argument that the relief sought by the plan was not equitable because the plan could not trace its property or monetary interest to particular funds or assets held by the beneficiaries." *Id.* at 595. *See also GE Group Life Assur. Co. v. Kurczak*, 483 F. Supp.2d 671 (N.D. Ill. 2007)("Because GE group did not need to trace the Social Security award to any particular funds in Kurczak's possession, its claims had merit regardless of whether Kurczak actually spent the entire amount of the Social Security award as he claims.") *Id.* at 677. Pennington's argument that dissipated funds defeat equitable relief is without merit.

Pennington also argues that the Plan language does not satisfy the two requirements for an equitable lien. [DE 19-2, pp. 5-6]. This argument is not supported by recent case law. *Gilchrest* identified the equitable lien requirements as: "that the agreement specifically identify a particular

7

fund – distinct from the defendant's general assets – and a particular share of that fund to which the plan was entitled." *Gilchrest,* 255 Fed. Appx at 45. Pennington relies on *Fleetwood Enterprises, Inc. v. Taylor*, 2007 WL 2826180 (W.D. Ky. 2007), in which the court denied an equitable lien because the "Fleetwood Plan fails to specify the portion due the plan." *Id.* at *4. The Fleetwood reimbursement provision said: "The Plan shall have the right of first reimbursement from any recovery a covered Member receives, even if the covered Member has not been made whole." *Id.* Pennington contends that "neither requirement was satisfied by the [Fleetwood] plan's language." [DE 19-2, p. 5]. That is not true. The court held "the Fleetwood Plan specifies the fund – any recovery a covered Member receives – out of which reimbursement is due to the plan." *Id.* at *4. Thus, *Fleetwood*, supports ICG's argument that its Plan specified the particular fund from which reimbursement is due.

In *Sereboff*, the court held that the "plan specifically identified a particular fund, distinct from the Sereboffs' general assets – '[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)' – and a particular share of that fund to which Mid Atlantic was entitled – 'that portion of the total recovery which is due [Mid Atlantic] for benefits paid.'" *Sereboff*, 547 U.S. at 364. That language was sufficient to support Mid Atlantic's equitable lien.

In *Gilchrest*, the plan provided that Unum had the right to recover overpayments due to "your receipt of deductible sources of income." *Gilchrest*, 255 Fed. Appx. at 45. It also provided that "Unum will not recover more money than the amount we paid you." *Id.* The Sixth Circuit held that "the Plan's overpayment provision asserts a right to recover from a specific fund distinct from Gilchrest's general assets – the fund being the overpayments themselves – and a particular share of that fund to which the plan was entitled – all overpayments due to the receipt of Social Security benefits, but not to exceed the amount of benefits paid." *Id.* at 45-46. Accordingly, summary judgment in favor of Unum on its equitable claim to recover overpayments was affirmed. *See also Proffitt v. Group Long Term Disability Plan for Family Practice Center*, 2007 WL 2692177 (E.D.

8

Tenn. 2007) ("Hartford seeks a specifically identifiable fund, the overpayments from the SSA benefits paid to Proffitt").

In the present case, the Plan identifies a specific fund – "any payment relating to an injury or illness caused by a third party" – and a particular share of that fund to which ICG would be entitled – "repayment of the amount of Medical ... Benefits received." In further support of this language, the Plan provides that a beneficiary is required to: "[r]eimburse the Plan for any benefit payment that you or your dependents receive from a settlement with a third party." It is the opinion of this Court that ICG's Plan satisfies both requirements for an equitable lien by agreement.

### C. Make Whole Doctrine

In *Marshall v. Employers Health Ins. Co.*, 1997 WL 809997 (6th Cir. 1997), the Sixth Circuit adopted a federal common law, default or gap-filler, "make whole" rule when a policy or plan is ambiguous or silent regarding subrogation or reimbursement rights. *Id.* at *4. The rule was said to be "consistent with the equitable principle that [the] insurer does not have a right of subrogation until the insured has been fully compensated, unless the agreement itself provides to the contrary." *Id.* The court continued:

> Where a plan itself is clear on its face, we will not apply a common law rule of interpretation which is contrary to the terms of the plan. *See Ryan by Capria-Ryan v. Federal Express Corp.,* 78 F.3d 123, 126 (3rd Cir. 1996) ("[C]ourts have no right to torture language in an attempt to force particular results ... the contracting parties never intended or imagined. To the exact contrary, straightforward language ... should be given its natural meaning.").

*Id.* at *5. The *Marshall* plan's reimbursement clause said:

> If benefits are paid under the policy and You or Your covered Dependent recovers from a responsible third party by settlement, judgment, or otherwise, We have the right to recover from You or Your covered Dependent an amount equal to the amount we paid.

*Id.* at *4. The court held that "the reimbursement clause is neither ambiguous nor silent on the issue [of] the Plan's entitlement to the funds that it paid on behalf of Sandra Marshall." *Id.* Accordingly, summary judgment in favor of Employer's Health was affirmed. *Id.* at *6. Under

9

*Marshall,* the ICG Plan would also be unambiguous regarding entitlement to the funds paid to Pennington.

In *Copeland Oaks v. Haupt*, 209 F.3d 811 (6th Cir. 2000), the court reiterated the "make whole" rule and expanded it to hold that "in order for plan language to conclusively disavow the default rule, it must be specific and clear in establishing *both* a priority to the funds recovered *and* a right to any full or partial recovery." *Id.* The court held a plan providing that "[t]hese rights provide the Plan with a priority over *any* funds paid by a third party to a Covered Person..." was insufficient to "establish its priority right over any *partial* recovery." *Id.* at 813-14, emphasis in original. Accordingly, the make whole rule was applied.

Pennington states that her damages significantly exceeded the settlement amount and she was not made whole. She contends that the ICG Plan language does not conclusively disavow the default "make whole" rule, and this default rule bars ICG's claim. ICG says the Plan language provides: "The Plan shall have the right of first reimbursement from any recovery the covered Member receives, even if the covered Member has not been made whole." [DE 15-4, p. 4; DE 22, p. 3]. Pennington does not dispute this language, but focuses on the following language: "The Medical Plan's right to subrogation and repayment is regardless of whether you have been made whole or fully reimbursed for your damages and regardless of any classification of such recovered proceeds as medical, dental or vision expenses." In addition to claiming that this language is not sufficient to bar application of the "make whole" rule, Pennington further argues that it is contained in a "contingent" provision that bars recovery as discussed below.

Under *Marshall* and *Copeland*, the ICG Plan unquestionably gives priority to the right of reimbursement – "Plan shall have the right of first reimbursement from any recovery." With respect to priority over any partial recovery, the Plan states that this right of first reimbursement applies "even if the covered Member has not been made whole." This is reemphasized when the Plan provides that the right of reimbursement applies "regardless of whether you have been made whole

10

or fully reimbursed for your damages." As the *Marshall* court emphasized, courts should "not apply a common law rule of interpretation which is contrary to the terms of the plan. It is the opinion of this Court that the Plan clearly and unambiguously disavowed the "make whole" default rule.

Pennington further argues that any disavowal of the make whole rule is contained in an unenforceable "contingency" clause that begins as follows:

> In addition, the Medical Plan is not obligated to pay Medical, Dental or Vision Benefits for any medical expenses for which a third party may be liable, unless you or someone legally authorized to act for you promises in writing to:

Pennington states that "no agreement to these terms [was] ever presented to or signed by [her]." [DE 19-2, p. 11]. She argues that ICG waived any rights under this provision by failing to obtain a written agreement. *Id.* In support, she relies on *Health Cost Controls v. Wardlow*, 825 F. Supp. 152 (W.D. Ky. 1993).

In *Wardlow*, the copy of the policy provided to the injured party "apparently omitted the reimbursement provision altogether." *Wardlow*, 825 F. Supp. at 154. The court held that, under Kentucky law, this omission alone precluded enforcement of the plan's claim for reimbursement. "Notice of limitations to the insurance coverage provided an insured is a fundamental policy of this commonwealth." *Id.* at 156. The Sixth Circuit affirmed summary judgment in favor of the beneficiary on the ground that there was no evidence the policy provided to the defendant "contained the language on which [the plaintiff] relies." *Health Cost Controls v. Wardlow*, 1995 WL 63173 at *1 (6th Cir. 1995). Unlike *Wardlow*, there is no dispute in the present case that the subrogation and repayment provisions were contained in the ICG plan and were fully available to Pennington had she made any effort to review them when she made her claims for benefits.[1]

As a second ground for denying reimbursement, *Wardlow* held that the "reimbursement term expressly conditioned medical coverage for Defendant Wardlow's injuries upon her

---

[1] Pennington states in her affidavit that she was not aware of any duty to repay ICG and was not advised as to the Plan terms. [DE 19-3, ¶ 4].

11

agreement, in writing to repay HHC from any legal damages award." *Id.* at 156. Where no written agreement was requested until long after payment was made, the court held that "HHC intentionally relinquished a known right, and thereby waived the protection of its reimbursement." *Id.*

In the present case, however, the Plan has additional language giving a right of first reimbursement and refuting a make whole requirement. The parties do not mention any contingency with respect to this language.

Additionally, it is not clear that waiver is a viable claim under the federal common law of ERISA. The Sixth Circuit has not ruled on the issue and there is a split in the circuits. *Agee v. Jennie Stuart Medical Center*, 2007 WL 923090 at *5 (W.D. Ky. 2007). The circuits recognizing waiver have held that "the plaintiff must demonstrate that the defendant intentionally relinquished its known rights, resulting in a detriment to the plaintiff or a benefit to the defendant." *Id.* Pennington cannot claim detrimental reliance on the contingency since she insists she was not aware of any requirement for reimbursement. Moreover, she has not shown that ICG intentionally relinquished its known rights.

### D. Waiver of Subrogation Rights

Finally, Pennington argues that ICG had nothing more than a right of subrogation, and it waived that right by failing to intervene in the third-party action after receiving the notice required by Kentucky statutes. Kentucky law requires a plaintiff to notify all parties with rights of subrogation regarding the commencement of an action to recover damages and to state that failure to assert subrogation rights by intervention "will result in a loss of those rights with respect to any final award received by the plaintiff as a result of the action." KRS 411.188(2).[2] There is no dispute that this notice was given to ICG.

---

[2] Subsection (3) of this statute was held unconstitutional in *O'Bryan v. Hedgespeth*, 892 S.W.2d 571, 578 (Ky. 1995). The Court of Appeals subsequently held that the rest of the statute remains in effect. *Government Employees Ins. Co. v. Winsett*, 153 S.W.3d 862, 865 (Ky. App. 2004).

Case: 5:07-cv-00156-KSF-JBT   Doc #: 24   Filed: 02/09/09   Page: 13 of 13 - Page ID#: 246

In *Marshall*, the Sixth Circuit said:

> However, there is a significant difference between subrogation and reimbursement. "While subrogation and reimbursement may have similar effects, they are distinct doctrines." *Unisys Medical Plan v. Timms*, 98 F.3d 971, 973 (7th Cir. 1996). "Unlike subrogation, which arises under state law and allows the insurer to stand in the shoes of its insured, reimbursement is a contractual right governed by ERISA and comes into play only after a plan member has received personal injury compensation." *Id.*

*Marshall*, 1997 WL 809997 at *5. While it is arguable that ICG waived its right to subrogation under Kentucky law, Pennington has failed to show any waiver of its right to reimbursement under federal common law. *See Agee*.

### III.  CONCLUSION

**IT IS ORDERED**:

A.  The motion of International Coal Group, Inc. for summary judgment [DE 15] is **GRANTED**.

B.  The cross motion of Dorothy Pennington for summary judgment [DE 20] is **DENIED**.

C.  Judgment consistent with this Opinion and Order shall be entered contemporaneously herewith.

This February 9, 2009.



Signed By:

*Karl S. Forester*  KSF
**United States Senior Judge**

13